UNITED STATES SUGAR CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112338. Promulgated October 11, 1943.

*Forest P. Tralles, Esq.*, for the petitioner.
*R. E. Maiden, Jr., Esq.*, and *Sidney B. Gambill, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge:* This case involves Federal unjust enrichment taxes and penalties for the fiscal years ended June 30, 1936, and June 30, 1937, as follows: For the year ended June 30, 1936, a deficiency of $63.85 and a penalty of $15.96. The petitioner does not contest as to such amounts and no further reference will be made thereto. For the year ended June 30, 1937, a deficiency of $18,068.77, with a penalty of $4,517.19, is involved. All facts were stipulated and we find the facts to be as so stipulated. There is very little, if any, issue of fact between the parties and we will herein state only such pertinent facts as are necessary to the consideration of the issues involved, which is, whether the petitioner is subject to unjust enrichment tax upon reimbursements received from a processor of sugar.

Such facts are, in effect, that the petitioner, during the taxable years and prior thereto, grew sugar cane and converted it into raw sugar, but did not refine raw sugar; that a contract was entered into in 1932 and another, superseding it, was entered into in 1934, with the Savannah Sugar Refining Corporation (hereinafter called Savannah), which was a refiner of raw sugar. The contract of 1934 provided in substance and in pertinent part as follows: That petitioner, therein called producer, agreed to sell and Savannah, therein called the refiner, agreed to buy raw sugar; that title thereto should pass upon

delivery from producer to refiner; that the refiner would deliver refined sugar in exchange and in complete payment for the raw sugar delivered, but that whenever deliveries of raw sugar to the refiner exceeded 50,000 tons in any one "campaign" the refiner had the option as to such excess to store the sugar and insure it, without charge to the producer for storage or insurance, and thereafter to purchase it; that the refiner should use its best efforts to sell refined sugar, exchanged under the contract at market price, and should guarantee payment of all credit sales made by it; that the refiner should absorb and pay any brokerage charges on sugar sold by it and insure at its own expense both refined and raw sugar for the benefit of the producer; that the price to be paid by the refiner to the producer for refined sugar sold by the refiner for the producer should be the net amount received by the refiner; that the term "net price" should be arrived at by including in the deductions from the gross price an amount equal to the processing tax; that the refiner should provide storage space, free of charge, for all refined sugar; that in consideration of the performance by the refiner it should receive 80 cents per hundred pounds of raw sugar delivered to it; that settlement should be made between the parties on the 10th of each month for all refined sugar shipped by the refiner for the account of the producer during the preceding months, the refiner to deduct all sums due it, including interest and other customary credit charges and any advances made to the producer; that to guard against inequities between the parties, because of any increase in tax burdens, the refiner should bear all ad valorem taxes, income taxes, corporation capital stock, and occupation taxes imposed upon it, but that all processing taxes imposed upon it for refining the raw sugar and all sales taxes imposed upon it for selling the producer's sugar should be paid by the refiner for the account of the producer, charged against the producer, and deducted and reserved by the refiner from the proceeds of sale of the producer's sugar.

The contract was uniformly carried out as follows: The petitioner shipped the raw sugar to Savannah, Savannah paying the freight thereon for the account of petitioner. Savannah refined the sugar and sold it for the account of the petitioner. Monthly reports were rendered by Savannah to the petitioner, showing quantities and prices of refined sugar sold on petitioner's account and determining the proceeds due, less freight, refining charge, processing taxes, and other taxes and expenditures chargeable to the petitioner under the contracts; and the proceeds of such sales were remitted, less such charges. Though the contract provided that title to the raw sugar passed to Savannah, the parties seem in agreement that this was only by way of security, and that in fact petitioner's sugar was refined, and sold, by Savannah.

Savannah was a processor of raw sugar and was subject to the processing tax imposed by the Agricultural Adjustment Act. The petitioner was not a processor. Savannah was not affected by market fluctuations as to raw sugar received by it from petitioner, but merely received payment for its services rendered. It did not carry in its inventories the raw sugar received from the petitioner. While the Agricultural Adjustment Act was effective, Savannah paid approximately $443,000 in processing taxes applicable to the refining of sugar received from the petitioner. It filed monthly returns of such Federal processing taxes and paid such taxes during all months from the effective date of the Agricultural Adjustment Act through November 1935, and it deducted the amounts thereof in settling with the petitioner. The United States Supreme Court having invalidated the tax on January 6, 1936, no return was filed for December 1935 by Savannah, and $28,586.60, the amount of the tax computed upon sugar processed in December 1935 and deducted in settlement with the petitioner, was returned by Savannah to the petitioner during petitioner's fiscal year ended June 30, 1937. The petitioner filed its unjust enrichment tax return for the fiscal year ended June 30, 1937, on April 15, 1938. reporting no unjust enrichment tax liability. The Commissioner determined, in the deficiency notice, that petitioner had received reimbursement of processing tax in the amount of $28,682.98 and that, since the petitioner had not furnished any evidence to establish that the burden of the tax was borne by it, the $28.682.28 reimbursed should be restored to income subject to unjust enrichment tax. The record herein contains no evidence that the burden of the tax was borne by the petitioner.

The only portions of the Unjust Enrichment Tax Act of 1936 which are brought into the issues here by either of the parties are sections 501 (a) (2)[1] and 501 (k)[2] of the Revenue Act of 1936. Abbreviated,

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

\* \* \* \* \* \* \*

(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

\* \* \* \* \* \* \*

[2] (k) All references in this section to the purchase or sale (or to parties to the sale) of articles with respect to which a Federal excise tax was imposed shall be deemed to include the purchase or sale (or parties to the sale) of services with respect to which a Federal excise tax was imposed, and for the purposes of subsection (a) the extent to which the taxpayer shifted to others the burden of such Federal excise tax with respect to such services shall be presumed to be an amount computed as follows: From the selling price of the services there shall be deducted the average price received by the taxpayer for performing similar services during the six taxable years preceding the initial imposition of the Federal excise tax in question. The balance \* \* \* shall be the extent to which the taxpayer shifted the burden of such Federal excise tax to others. \* \* \*

the issue is whether the petitioner is liable for a tax of 80 percent, primarily under section 501 (a) (2), upon the $28,586.60. The income tax credit reduces the tax to $18,068.77.

The petitioner takes the view, in substance, that it was no vendee of sugar from Savannah, for it produced the sugar itself, so that it could not receive reimbursement from its vendor of processing taxes included in the price of articles purchased; further, that all processing taxes to the United States were paid as and when due, and that it had never retained any such taxes; that the processing tax for sugar refined in December was not due and payable under the law until January 31, 1936, and that prior to that date, and on January 6, 1936, the Supreme Court had invalidated the law, so that no such tax ever became payable; that the intent of the act was to reach those who withheld payment of the tax, anticipating the decision of the Supreme Court, and thus profited, but that the petitioner, who withheld nothing, is not within the statute; in short, that the $28,586.60 was never payable as processing tax, but was merely a balance between petitioner and Savannah representing proceeds of sugar refined and sold under their contract.

The respondent contends that under section 501 (a) (2) and (k) the petitioner received reimbursement from its vendor "of amounts representing Federal excise tax burdens included in prices paid by such person to such vendors," inasmuch as under subsection (k) reference to purchase or sale of articles with respect to which a Federal excise tax was imposed "shall be deemed to include the purchase or sale * * * of services with respect to which a Federal excise tax was imposed"; that Savannah, in processing sugar, the petitioner's raw sugar, for a toll charge and payment of taxes, sold to the petitioner, and the petitioner was the vendee of, services with respect to which the excise tax was imposed.

The respondent refers to Regulations 95, article 15,[3] covering section 501 (k), and also points out that, though the processing tax was admittedly not delinquent until the end of January, 1936, nevertheless it was imposed upon the processing done by Savannah. therefore

---

[3] ART. 15. *Computation of extent to which Federal excise tax burden was shifted on sales of services with respect to which a Federal excise tax was imposed.*—The tax imposed by section 501 (a) (1) on that portion of the net income from the sales of articles with respect to which a Federal excise tax was imposed on the taxpayer *but not paid,* which is attributable to shifting to others to any extent the burden of such Federal excise tax, is also applicable to the purchase and sale of services with respect to which a Federal excise tax was imposed but not paid. The net income from such services shall be computed as provided in section 501 (c) (1) or 501 (c) (2). (See article 7.) The tax imposed by section 501 (a) (2) and section 501 (a) (3) on net income from reimbursement and from refunds or credits, respectively, is likewise applicable to reimbursement and refunds and credits with respect to services. For example, custom slaughtering, custom milling for toll as well as commercial milling or processing of wheat, rice, corn, or rye, may give rise to taxable income under Title III, if a Federal excise tax was imposed on the taxpayer with respect to such processing.

was imposed upon Savannah with respect to processing done in December, 1935, and was not paid; so that the statute squarely applies.

In our opinion, the question as to whether the tax was not due until after it was invalidated is the same here as in *Tennessee Consolidated Coal Co.*, 46 B. T. A. 1035. Indeed, the respondent so urges and the petitioner, though noticing that fact in its reply brief, does not contend otherwise, merely stating that, if the petitioner is not a vendee, that case has no significance. In the *Tennessee Consolidated* case, as here, it was argued that the tax was never imposed as to certain periods because not payable until after it was invalidated by court decision. Examining the object of the statute, we concluded that the tax was imposed, even though before payment date came it had been held invalid. We follow that case here; the unjust enrichment tax is not inapplicable merely because the processing tax for December 1935, upon which it is based, was payable by January 31, 1936, and the decision in *United States* v. *Butler*, 297 U. S. 1, invalidated the Agricultural Adjustment Act on January 6, 1936.

As above noted, however, the petitioner's view is that it is no vendee, within the statutory language. Section 501 (k) includes services in all references to articles with respect to which a Federal excise tax was imposed. That Savannah sold services to petitioner is not denied. The petitioner argues that Regulations 95, article 15, indicate that section 501 (k) was intended to cover only cases where a processor included the tax in the price of its services and passed the burden on to others, and only, under the words of Regulations 95, article 15, "if a Federal excise tax was imposed on the taxpayer with respect to such processing"; and that the taxpayer here, not being the processor and having no excise tax imposed on it, is not properly to be regarded as vendee.

Reference to the Committee Reports upon this section of the Revenue Act of 1936 indicates clearly the breadth of the intention of the act. The report from the House of Representatives (No. 2475. 74th Cong., 2d ses., Apr. 12. 1936) on the subject of the tax on unjust enrichment opens the discussion by saying:

Title III imposes a special income tax on the unjust enrichment accruing to any person as a result of passing on to others the burden of Federal excise taxes. The tax is 80 per cent of the income representing unjust enrichment.

The Senate Report (No. 2156. 74th Cong., 2d sess., Cal. No. 2266, June 1, 1936) on the same subject says, in part:

Dealers who receive reimbursement from their vendors for any amount of excise-tax burdens will be taxable on such reimbursement to the extent that such dealers have shifted such excise-tax burdens, in whole or in part, to their customers in any manner.

\*          \*          \*          \*          \*          \*          \*

*Section 501 (a) 2.*—This paragraph is rewritten merely to clarify its meaning. It imposes the 80 per cent tax on dealers who are reimbursed by their vendors for excise-tax burdens which they have in turn shifted to their customers.

It is clear that it was the intent of Congress to collect a tax of 80 percent from those who passed the processing tax on to the consuming public and did not absorb it. In effect, the petitioner seeks to distinguish its position from that covered by the statute, first on the theory that, although the processing tax upon Savannah was paid on petitioner's account, nevertheless it was not included in the price which petitioner paid for services, the $28,586.60 being "merely a balance of open account" due the petitioner from Savannah, and therefore that the statute does not apply. In other words, petitioner seems of the view that where there is purchase and sale of services, an arrangement whereby the processing tax, though actually borne by the vendee of services, is kept separate from and outside of the price set for the services, keeps the statute from applying, even though when the vendee of services sells and passes on to the consuming public the article (upon which the services were rendered, subjecting the vendor of services to the processing tax), the amount of the processing tax imposed, paid on the vendee's account and refunded to him, is included in the price of the articles sold by him. The point depends upon the language of section 501 (a) (2), imposing the unjust enrichment tax upon "reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors." We find upon careful examination that the statute does not in fact require that the "reimbursement received * * * representing Federal excise-tax burdens" be included in prices paid for *services*, but only that it be "included in prices paid" by the taxpayer. That the $28,586.60 was reimbursement from a vendor of amounts representing Federal excise tax burdens can not be reasonably denied, nor can it be denied that the petitioner paid to Savannah amounts other than the mere 80 cents per hundred pounds of raw sugar refined. Since under the contract there was a settlement within ten days after the end of each month, as to sugar refined during such preceding month, and since in connection with that settlement Savannah had a right to deduct from the proceeds of sale of the refined sugar the processing tax and various other charges, and since such a deduction from petitioner's funds plainly constitutes a payment by it, it is apparent that the petitioner had paid to Savannah the amount of the processing tax here involved, prior to the reimbursement. In short, petitioner had paid prices to the processor, Savannah, and included therein was the processing tax; so that literally the statute comprehends the facts here. In addition, in our opinion, we think the $28,586.60 was included in prices paid for *services*. That amount was paid as an integral part of a series

of charges against the petitioner provided by the contract, including as only one of such series the 80 cents per hundred pounds, and all going into the computation of the net amount to be received by the petitioner. Indeed, the contract specifically provides that "net price" shall be arrived at "by including in the deductions from the gross price  *  *  * an amount equal to any so-called processing tax  *  *  *." In other words, the processing tax is merely one of the deductions which result in the net amount received by the petitioner, and we see that in fact and within the strict letter of section 501 (a) (2) the reimbursement did represent an amount included in prices paid by the petitioner for services to its vendor of services and that it may not reasonably be maintained that there was divorcement between the price paid for services and that paid to cover the Federal excise tax burden, and reimbursed. We consider that all of the amounts, including the 80 cents per hundred pounds of raw sugar refined, and the amount equal to the processing tax, were paid as a whole for all of the services rendered, for those services did not include merely refining, but included selling the sugar, guaranteeing loss against credit sales, paying for insurance and storage, and paying taxes, other than processing and sales taxes without reimbursement, and attending to and paying the processing tax and any sales tax, with reimbursement, in that they might be used as deductions in computing the net amount for which settlement should be made at the end of the next month. Though the contract was carried out as one of service performed, in form it was one of sale of petitioner's sugar for a price to be received, which tends strongly to demonstrate the inseparability of processing tax and other items, such as the 80 cents per hundred pounds, entering into the net settling price. In our view, therefore, the petitioner comes clearly within the language of section 501 (a) (2).

However, petitioner argues that section 501 (k), upon which the respondent depends for the application of the idea that petitioner is a vendee of services, is, when read altogether, seen to cover only cases where the processor is the taxpayer involved since it covers situations where the processor includes the tax in the price of his services and passes the burden on to others; and that, the petitioner being no processor, the section is not applicable at all to it. We have examined the language of section 501 (k). The earlier part thereof clearly, in substance, includes services along with articles, in reference to articles with respect to which the excise tax was imposed. The petitioner therefore apparently, although the point is not explained, considers that the later language indicates the inapplicability of the section. That language is to the effect that the extent to which the taxpayer shifted the burden of the tax, with respect to services, shall be computed by deducting from the selling price thereof, the average

selling price received "by the taxpayer for performing similar services during the six taxable years preceding * * *. The balance * * * shall be the extent to which the taxpayer shifted the burden." We presume that the petitioner here means to argue that because of the reference to "the taxpayer" and the presumptive shift being computed by the use of similar services during the six preceding years, inapplicability to the petitioner here is shown. First, so far as the reference to computing the presumptive shift by the use of the six-year period is concerned, we are not greatly troubled; for in the computation of deficiency the Commissioner determined a shift of $28,-682.98 because of the lack of information from the petitioner on the schedules provided in the form of return for making the computation. The determination is presumed to be correct. and there is nothing in the record to indicate otherwise, for the amount determined by the Commissioner may be even less than an amount computed by comparison of the services with the average for six years. Moreover, the presumption is rebuttable by either party, and there seems no argument between the parties here that the amount for which reimbursement was received was included in the prices for which the petitioner's sugar was sold to the public. We conclude that the use of the six-year comparative formula in section 501 (k) does not demonstrate inapplicability to the petitioner, nor incorrectness of the determination. The petitioner, under the facts herein, appears plainly to have shifted to others the burden of the excise tax with respect to the services.

It remains to be considered whether the reference to "the taxpayer" and his performance of similar services during the preceding six years in section 501 (k) demonstrates that the section covers only the taxpayer who performed the services—which we understand to be the petitioner's argument. In our opinion. the language of section 501 (a) (2) and (k) combines to refute such idea, and is too broad to permit such a restricted view. Thus, section 501 (a) provides for the tax upon the net income "of every person which arises from the sources specified below," while the opening lines of section 501 (k) in equally general terms says that "All references in this section to the purchase or sale (or to parties to the sale) of articles" includes as to such purchase or sale, services with respect to which an excise tax was imposed. The services purchased by the petitioner were those "with respect to which a Federal excise tax was imposed." Section 501 (a) (2) provides for the 80 percent tax upon reimbursement received by a vendee of amounts representing Federal excise tax burdens. The mere fact, then, that section 501 (k) speaks of "the taxpayer" performing services does not indicate that under section 501 (a) (2), the vendee of services from such taxpayer is not subject to the 80 percent unjust enrichment tax. In view of the peculiarly clear purpose of the whole statute

and the interrelation of the language of section 501 (a) and (k), we are of the opinion that the vendee of services is not freed from the unjust enrichment tax because of the language of a portion of section 501 (k), and an expression in article 15 of Regulations 95. The language relied on, even if limited to the processor, may not be allowed to avail against that of section 501 (a), which applies the tax to the vendee as well.

The processing tax was imposed on the petitioner's vendor; the petitioner had income from reimbursement of an amount representing, under the language of section 501 (a) (2), the Federal excise tax burden, which was included in prices paid by the petitioner to its vendor, Savannah; and the determination and presumption of shift thereof has not been shown to be erroneous. We conclude and hold that the petitioner is subject to the unjust enrichment tax as set forth in the determination of deficiency.

*Decision will be entered for the respondent as to both taxable years.*